MARTIN L. GABLE, APPELLEE, v. THE PATHFINDER IRRIGATION DISTRICT, APPELLANT.

68 N. W. 2d 500

Filed February 18, 1955. No. 33627.

*Herman & Van Steenberg*, for appellant.

*Mothersead, Wright & Simmons*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ..

YEAGER, J.

This is an action for damages by Martin L. Gable, plaintiff and appellee, against The Pathfinder Irrigation District, defendant and appellant.

The action was tried to a jury at the conclusion of which a verdict was returned in favor of the plaintiff for $3,925. Judgment was rendered on the verdict. An alternative motion for new trial or for judgment notwithstanding the verdict was filed and overruled. From the judgment and the order overruling the motion the defendant has appealed. The defendant in its brief has set forth eight assignments of error as grounds for reversal. Attention will be directed to these assignments or such of them as require consideration later herein.

In order to understand to what they refer and to reach an appropriate determination it becomes necessary to state what is presented by the pleadings.

The cause of action, as it appears from the pleadings and evidence, substantially is that the plaintiff is the owner of the southwest quarter of Section 34, Township 23 North, Range 54, West of the 6th P. M., Scotts Bluff County, Nebraska; that a line of railroad tracks runs generally north and south through the tract of land on a line a short distance east of the west line; that along the east side of the track and paralleling the track the entire distance across plaintiff's land is a ditch; that the flow of water in this ditch is from north to south; that the slope or fall of plaintiff's land is from north to south; that the defendant is an irrigation district and this is a part of the irrigation system of defendant; that on and prior to June 6, 1953, the defendant maintained a crossing over the ditch for the use of plaintiff; that this crossing was about one-fourth the distance across the tract south of the north line thereof; that the crossing consisted of a 30-inch pipe which was placed in the ditch and was covered with earth; that on June 6, 1953, by reason of heavy rains to the north a volume of water larger than the pipe was able to carry came down the ditch and washed out the crossing; that thereafter the defendant negligently replaced the pipe and the crossing and in so doing removed the east bank of the ditch above and to the north of the crossing; that the earth removed was used to replace the crossing; and that on June 13, 1953, a heavy rain came and a large volume of water came from the north which by reason of the negligence of defendant in replacing the pipe and the crossing and the removal of the dirt from the east bank of the ditch caused the water to back up and run over the east bank where the dirt had been removed in large volume on and across the land of plaintiff in a southeasterly direction, thus causing damage to the land and destroying and damaging crops which were growing thereon.

To the extent necessary to set forth herein the defendant in its pleaded defense, in substance, denied that it constructed and maintained the ditch in question as a part of its irrigation system. It said that it did some digging which was for the sole benefit of plaintiff; that at the crossing in question it placed a 36-inch instead of a 30-inch pipe; that on June 14, 1953, a heavy rainfall in flood proportions fell on plaintiff's lands and lands to the north which came down through the ditch and that the water therefrom flowed to the south and southeast following the natural fall and drainage over and across plaintiff's land; that the flow was sudden and unprecedented and an act of God; and that any damage to plaintiff's land and crops was not the result of negligence on the part of the defendant.

The second and third assignments of error relate particularly to the question of whether or not plaintiff's evidence is sufficient to sustain the charge that the defendant was negligent as charged and whether or not plaintiff has sustained damage which is compensable under the facts and law.

The material evidence of plaintiff in this respect, briefly but sufficiently summarized, we think, is that plaintiff is the owner of the quarter section of land in question; that this land is crossed from north to south by a line of railroad; that the natural direction of flow of water is from the north of this land generally south and southeast; that the lowest path or valley from the north and south line across it is to the east of and not on the railroad right-of-way; that at a time not exactly determinable, but quite a number of years ago, a ditch was constructed on the east side of the railroad track; that it extended from some point north of plaintiff's land south through or almost through plaintiff's land; that the defendant has a dike or earthen fill 12 to 15 feet high, that is, that high above plaintiff's land, along the north edge of plaintiff's land and across the ditch in question here on which an irrigation lateral is carried;

that water coming from the north in the ditch was formerly carried under the dike by a pipe but at the time in question here it was carried by flume; that the ditch was maintained by the defendant; that over the years three crossings had been constructed over the ditch by the defendant to furnish access by plaintiff to his land, one of which was about one-fourth the distance across the land from the north line, one about half the distance, and the third near the south line; that the second had been removed; that the first, which is the one of importance in this litigation, consisted of a tube or pipe placed with its lowest part below the bottom of the ditch which was covered with earth; that prior to June 13, 1953, water coming from the north passed down the ditch thence to a natural drainage below and did not spread out over plaintiff's land; that on June 6, 1953, there was heavy rainfall which the tube or pipe at the crossing was insufficient to carry in consequence of which the fill at the crossing was washed out; that at that time the water did not pass out over plaintiff's land but all of it flowed on down the ditch through plaintiff's land; that thereafter the defendant replaced the tube or tile in the crossing and re-covered it with earth; that the crossing was raised to a higher elevation than it had been previously and that the earth used for this purpose was taken from that portion of the east bank of the ditch which was between the dike and the crossing, one effect of which was to lower that part of the bank below the west bank, the crossing, and of course below the dike; that on June 14, 1953, there was another heavy rainfall causing water to come down the ditch from the north; that the tube was insufficient to carry the water under the crossing; that except for negligent construction of the crossing the ditch would have been sufficient to carry the water; and that this construction of the crossing and the removal of the east bank of the ditch caused the water to flow out over plaintiff's land and sugar beets damaging the land and the beets. It should be said additionally

that plaintiff's evidence in chief is in effect that no water came onto his land except that which came down the ditch and that which fell thereon. In rebuttal he testified that a small amount of water ran over and out of the irrigation lateral which was atop the dike but that no water came over from any other source.

This evidence, the defendant urges, was insufficient upon which to submit the question of negligence and damage to a jury. The question was presented to the district court by motion for directed verdict at the conclusion of plaintiff's evidence in chief and at the conclusion of all of the evidence.

The evidence of the defendant is contradictory of that of the plaintiff, but weight of evidence on the proposition being considered is not of concern.

For the purpose of a decision on a motion for directed verdict the motion must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom it is directed, and such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. Moncrief v. Interstate Transit Lines, 129 Neb. 168, 261 N. W. 163; Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107; Fuss v. Williamson, *ante* p. 525, 68 N. W. 2d 139.

The summary of plaintiff's evidence is to say that the defendant constructed and maintained an artificial drainage ditch and structures therein, which changed the natural flow of surface water, without reasonable care and in such manner that water was collected and thrown upon the land of plaintiff to his damage.

If this was true, and for the purposes of this review it must be so accepted, then it must be said that there was evidence of actionable negligence and damage.

It is the duty of one who constructs an artificial drain with structures therein changing the natural flow of surface water to use reasonable care to maintain it or them

so that water will not be collected and thrown on another to his damage. City of McCook v. McAdams, on second rehearing, 76 Neb. 11, 114 N. W. 596; Webb v. Platte Valley P. P. & Irr. Dist., 146 Neb. 61, 18 N. W. 2d 563; Faught v. Dawson County Irr. Co., 146 Neb. 274, 19 N. W. 2d 358; Purdy v. County of Madison, 156 Neb. 212, 55 N. W. 2d 617; Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350.

On the question of reasonable care, which is an element of the rule, it may be said that from the evidence of knowledge that the pipe under the crossing was insufficient to carry the water coming down the ditch and the evidence that the protective bank above the crossing was removed that it was inferable that the defendant failed to use reasonable care in the construction and maintenance of the ditch and the structure therein.

The evidence of plaintiff was sufficient, as pointed out in the summary of evidence, to permit a finding that the water of which complaint is made would not have flowed as it did and would not have damaged plaintiff's land and crops except for the negligence of the defendant.

It must be said therefore that the court did not err in overruling the defendant's motions for a directed verdict.

In its first assignment of error the defendant says that the court erred in assuming in instructions that the defendant owed a duty to plaintiff to keep run-off surface water off of plaintiff's land.

To what that assignment has reference is not made clear. Attention is not, in argument, directed to any instruction wherein it is contended that this is true, and our examination of the instructions discloses no support for the contention. The court on this phase of the case appears to have fairly presented the respective contentions of the parties.

One of the defenses to the action was that the occurrence of which complaint is made by plaintiff was within the meaning of law an act of God and that because

thereof the defendant is not liable for any damage sustained by the plaintiff.

The sixth assignment of error is that the court's instructions given relative to this defense were erroneous. Particular complaint is made of instruction No. 8. In this instruction act of God is defined correctly. After the definition the following appears: "For a loss occasioned by an 'Act of God', the defendant is not liable provided its own negligence has not contributed to the damage." The attack upon this instruction appears to be that the court should have told the jury that in case of an act of God a defendant is not liable unless his negligence *contributed in a large degree* instead of *contributed* as was done by the instruction.

To sustain its position in this regard the defendant cites Republican Valley R. R. Co. v. Fink, 18 Neb. 89, 24 N. W. 691. This case lends no support. An instruction was given in that case containing the words in question which instruction was approved, but the particular words were not referred to in the approval. It was approved over objection of the appellant because, as the court said: "The instruction, therefore, was favorable to the railroad company, and it has no cause of complaint because it was given."

The effect of defendant's contention in this respect would be to say that before one may be required to respond in damages where damages flow in part from an act of God such one must have by his negligence contributed to the damage in a large degree. No legal principle sustains this viewpoint. The true rule, we think, is one set forth as the majority rule in annotation in 112 A. L. R. 1084. This rule is quoted in defendant's brief. It is the following: "In the majority of cases involving the flooding of lands in which it appeared that part of the waters doing the damage complained of were the result of an act of God and part were the result of defendant's negligent or wrongful acts, it has been held that defendant was liable only for the proportionate

amount of the damage caused by the waters attributable to his fault."

There was no error in instruction No. 8.

The effect of the fifth assignment of error is to say that the court erred by failure to require plaintiff to allocate the damages sustained by him as a result of the negligence of defendant and those not sustained thereby.

This contention appears to be without merit. The action of plaintiff was solely predicated upon negligence of the defendant. The defendant denied negligence and affirmatively pleaded that the entire damage resulted from an act of God. The case was tried on the theories pleaded by the parties alone. On these theories the jury was fully and fairly instructed.

In Ellis v. Union P. R. R. Co., 148 Neb. 515, 27 N. W. 2d 921, it was said by quotation from 53 Am. Jur., Trial, § 574, p. 452: " 'It is a well-settled general principle that the instructions given by the trial court should be confined to the issues raised by the pleadings in the case at bar and the facts developed by the evidence in support of those issues or admitted at the bar.' " See, also, Citizens Nat. Bank v. Sporn, 115 Neb. 875, 215 N. W. 120; Becks v. Schuster, 154 Neb. 360, 48 N. W. 2d 67; Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677.

At the close of plaintiff's case in chief he was allowed to amend the prayer of his petition by increasing the ad damnum from $3,500 to $5,750. The propriety of this was raised by the seventh assignment of error.

The office of the ad damnum in a pleading is to fix the amount beyond which a party may not recover on the trial of his action. Cole v. Hayes, 78 Me. 539, 7 A. 391; Karnuff v. Kelch, 69 N. J. Law 499, 55 A. 163; Vincent v. Mutual Reserve Fund Life Assn., 75 Conn. 650, 55 A. 177.

The general rule is that an amendment may be made to a pleading which does not change the issues nor affect the quantum of proof as to a material fact at any stage of the proceedings. Miller Rubber Products Co. v. Anderson, 123 Neb. 247, 242 N. W. 449; Robinson Out-

door Advertising Co. v. Wendelin Baking Co., 145 Neb. 112, 15 N. W. 2d 388.

No good reason is apparent why this rule should not apply to the ad damnum as well as any other part of a petition.

In this case the amendment changes no issue and neither did it affect any quantum of proof. The evidence of plaintiff designed to support the amendment had been adduced and no different burden rested on defendant thereafter which did not exist before. The assignment is without merit.

Assignment of error No. 8 challenges the propriety of evidence of plaintiff admitted on rebuttal. Without referring to the evidence specifically, we fail to see how it may be regarded other than rebuttal of testimony of the defendant. There was no error.

By the fourth assignment of error it is contended that the instruction on measure for the assessment of damages was in part incorrect.

The evidence indicates that some of the beets were entirely destroyed and some were only damaged. Under law there is a measure for the assessment of damages for crops destroyed and another where there has been damage but not destruction. The measure submitted for all damages to plaintiff was the one applicable alone to damage without complete destruction.

The measure of damages to growing crops destroyed by the wrongful act or omission of another is the value at the time of destruction. Pulliam v. Miller, 108 Neb. 442, 187 N. W. 925; Ricenbaw v. Kraus, *supra.*

The measure where a crop is injured but not rendered entirely worthless as a result of the acts or omissions of another is the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at the time injured less the expense of fitting for market that portion of the probable crop which was prevented from maturing. Hopper v. Elkhorn Valley Drainage District, 108 Neb.

550, 188 N. W. 239; Ricenbaw v. Kraus, *supra.*

The defendant urges that as to that portion which was destroyed the former of these two measures should have been applied under instructions.

This contention may not be sustained. There was no severance of these two phases in pleading or proof. The matter in issue was the total damage done to beets growing in a field on plaintiff's land. The rule as laid down in the cases cited under the second measure should be regarded as controlling here.

The next and last proposition to be considered is one which has been argued but not specifically presented by an assignment of error. It is thought however that it has been sufficiently presented under assignment No. 3, that is, that the verdict is not sustained by sufficient evidence and is contrary to law.

The point of this proposition is that there was no proper or competent evidence upon which to fix the amount of plaintiff's damage.

The rule as to the fixation of damage to growing crops is found in Hopper v. Elkhorn Valley Drainage Dist., *supra.* Paraphrased it is as follows: In determining the value of farm products of any year the jury should take into consideration the circumstances which conditioned the probability or improbability of the maturing of the crops in the absence of injury, and all other facts and circumstances shown by the evidence tending to establish such value, which would properly include those arising before, at the time of, and after the injury, for the purpose of arriving at the difference between the value of that crop before and after the injury.

As elements to be considered under the rule the court approved an instruction designating elements which should be considered, as follows: The kind of crops planted, the nature of the land, the kind of season, what crops according to the season the land would ordinarily yield, the state of the crops' growth when injured or destroyed, the average yield of similar land in the neigh-

borhood where a crop was cultivated in the same way and not injured, the market value of the crop injured and the market value of the reasonably probable crop without injury, the expense that would have been incurred after injury of fitting for market the portion of the crop the wrongful act prevented from maturing, the time of the injury, the circumstances which conditioned the probability or improbability of the maturing of the crops in the absence of injury, and all other facts and circumstances shown by the evidence tending to establish the value.

The item of marketing expense may be disregarded since it is true that this burden fell upon the tenant upon the land and not upon the plaintiff.

None of the named elements has any support in the evidence except that of the market value of the crop injured. The plaintiff in this respect has rested his case on his testimony as to the difference between the market value of the crop in its injured condition and what the value would have been if there had been no injury, based on a 10-year average of production on the land. It is true that he testified that the damage to beets was $2,500, but unequivocally he based this solely on a 10-year average of production on the land.

There is no purpose to say that there must be evidence on all of the elements proper to be considered as pointed out in Hopper v. Elkhorn Valley Drainage Dist., *supra*, but it must be said that sufficient of them must be proved to apprise the jury of the pertinent facts and circumstances relating to the particular year and the conditions which obtained at that time with reference to the subject matter. There is an absence of any such evidence.

In the light of the failure of proof in this respect the defendant is entitled to a new trial.

The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.